JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| LOS ANGELES WATERKEEPER, a non-profit corporation, | Case No.: 2:17-cv-02066-ODW-GJS |
|---|---|
| Plaintiff, | **CONSENT DECREE AND ORDER** |
| vs. | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |
| AJAX FORGE CO., a corporation, | |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WHEREAS,** Los Angeles Waterkeeper ("Waterkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California.

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Ajax Forge Co. ("Defendant" or "Ajax") owns and operates a metal forging facility at 1956 East 48th Street, Los Angeles CA 90058 ("Facility").

**WHEREAS**, on January 13, 2017, Waterkeeper sent a sixty (60) day notice letter ("Notice Letter") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA").  The Notice Letter alleged violations of the CWA for Defendant's alleged discharges of pollutants into storm drains and receiving waters from the Facility, including the Los Angeles River, the Los Angeles/Long Beach Harbor, and the San Pedro Bay to the Pacific Ocean (collectively "Receiving Waters"), in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 97-03-DWQ ("1997 Permit"), as superseded by Order No. 2014-0057-DWQ ("2015 Permit").  The 1997 Permit and/or 2015 Permit may be referred to generically as the "Storm Water Permit";

**WHEREAS**, on March 15, 2017 Waterkeeper filed a complaint ("Complaint") against Defendant in the United States District Court, Central District of California (Case No. 2:17-CV-02066-ODW-GJS), entitled *Los Angeles Waterkeeper v. Ajax Forge Co.*

**WHEREAS**, the Defendant denies all allegations of the Complaint;

**WHEREAS**, Plaintiff and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

WHEREAS, Defendant is operating the Facility on part time basis, has less than fifteen (15) full time employees, and shared with Plaintiff excerpts of its 2015 and 2016 tax returns including the Statement 2 attachments demonstrating that in 2016 it earned less than eighty thousand dollars ($80,000) taxable income;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facilities at which the alleged violations are taking place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Waterkeeper has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVES**

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Consent Decree, and to comply with the requirements of the Storm Water Permit and all applicable provisions of the CWA—specifically Receiving Water Limitations A, B and C at Section VI of the 2015 Permit, and Effluent Limitations A, B and C at Section V of the 2015 Permit, which requires, *inter alia*, that Defendant develop and implement Best Management Practices ("BMPs") designed to achieve Best Available Technology ("BAT") and Best Conventional Pollutant Control Technology ("BCT") at the Facility.  Defendant shall develop and implement BMPs at the Facility necessary to comply with the 2015 Permit (or subsequently adopted Storm Water Permit) requirement to achieve compliance with BAT/BCT standards and with the applicable Water Quality Standards including, *inter alia*, standards outlined in the "Water Quality Control Plan—Los Angeles Region: Basic Plan for Coastal Watersheds of Los Angeles and Ventura County" ("Basin Plan") and those contained in 40 C.F.R. § 131.38 ("California Toxics Rule" or "CTR"). BMPs must be developed and implemented to prevent discharges or to reduce contamination in storm water discharged from the Facilities sufficient to achieve the numeric limits detailed in Table 1 of this Consent Decree.

7.      The term "Effective Date," as used in this Consent Decree, shall mean the last day for the United States Department of Justice and the United States Environmental Protection Agency (collectively "Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, and the Court enters the final Consent Decree.

8.      This Consent Decree will terminate on its own terms three (3) years from the Effective Date, unless there is a prior ongoing, unresolved dispute regarding Defendant's compliance with its terms.  Should there by such a dispute, Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination Date, which shall identify the issue in dispute.  The filing of such a Notice of Dispute shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case, or, alternatively, if the Settling Parties file a stipulation for dismissal.

9.      Defendant may move the Court to terminate the Consent Decree at any time provided that the following conditions, or such alternative conditions to which Defendant and Waterkeeper agree in writing after compliance with the meet and confer provisions of paragraph 43 below, are satisfied:

a.  Defendant has fully implemented all measures detailed in paragraph 15 below, and all other applicable requirements to be completed under this Consent Decree prior to the date on which the Defendant moves for termination;

b.  Defendant has revised and fully implemented its Storm Water Pollution Prevention Plans ("SWPPP") and Monitoring and Reporting Programs ("M&RP") pursuant to the requirements of this Consent Decree and the 2015 Permit;

c.  There are no ongoing, unresolved disputes regarding Defendant's compliance with this Consent Decree, including but not limited to any dispute related to the payment of fees/costs, Supplemental Environmental Project ("SEP") implementation, compliance monitoring fees, implementation of storm water and non-storm water control BMPs, and compliance with numeric levels detailed below at Table 1;

d.  All payments required under sections F (paras. 34 and 35) and G (paras. 38-40) of this Consent Decree are made; and

e.  Following the Effective Date of this Consent Decree, monitoring data from four (4) consecutive storm water samples collected at each discharge point demonstrate pollutant concentrations in stormwater discharges do not exceed the numeric levels in Table 1;

10.    To terminate early as provided above, Defendant shall file a motion for early termination with the Court.  Defendant shall provide Plaintiff and its counsel with written notice at least thirty-five (35) days prior to filing any motion for termination of the Consent Decree.

11.    Upon receipt of the written request to terminate, Waterkeeper may conduct an inspection of the Facility within thirty (30) calendar days and Ajax will work with Waterkeeper to schedule and accommodate the inspection, if requested, within the 30-day period.  During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives access to the Facilities' SWPPP, M&RP, and storm water monitoring records.  Further, Defendants shall allow Waterkeeper and/or its representatives to collect during the site inspection split samples of storm water or non-stormwater discharges, if applicable, at the Facility.  Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection and will, upon request, provide photographs and/or video to Ajax within fourteen (14) calendar days.

12.    Unless there is an ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, thirty-five (35) calendar days after written notice was given, Defendant may move the Court to terminate the Consent Decree and Waterkeeper shall not oppose the motion.

## II.    COMMITMENTS OF THE PARTIES

### A.    Industrial Storm Water Pollution Control Measures

13.    To ensure there are no unauthorized non-stormwater discharges, any non-stormwater discharges from the Facility not authorized by the Storm Water Permit shall be considered a breach of this Consent Decree.

14.    All storm water pollution measures required by this Consent Decree will be implemented at the Facility. Any disputes over the adequacy and/or timing of the implementation of BMPs shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

15.    BMP Plan. Ajax has or will implement the following additional BMPs by February 28, 2018 at the Facility at the location depicted in the site map attached hereto as Exhibit A:

   a.    Discharge Point 1 from the drain inlet at the northeastern corner of the Facility will be replaced.  An inlet filter fitted with filter media to address metals and total suspended solids will be installed. In addition, a trench drain or a berm will be installed along the driveway running to the inlet to prevent contaminated sheet flow out the driveway and to direct runoff to the inlet filter before discharge.

   b.    Discharge Point 2 from drain inlet located in the southeast area of the Facility will be traced.  The inlet and pipe will be evaluated by Ajax's consultant to determine the proper sizing to handle the flow volume. The inlet and pipe will be replaced if they are not currently, properly sized based on this evaluation. An inlet filter fitted with filter media to address metals and total suspended solids will be installed.

   c.    Discharge from the southwestern area of the Facility, along the southern boundary will be eliminated.  Drainage leading to this location will be routed via berms sandbags or curbing to Discharge

Point 2 prevent fugitive discharge along the southern boundary. Drainage from rooftops along the western boundary will be routed, via gutters and downspouts, to this Discharge Point 2.

d. The pavement in the northwestern area of the Facility that is cracked or iron stained will be scraped or power washed, and then coated or repaved.

e. All roof drains will be fitted with downspouts including filters such as or equivalent to the Kristar FloGard downspout filter (http://www.kristar.com/index.php/drain-inlet-filtration/flogard-downspout-filter).

f. Sandbags shall be installed along the east of the Facility to prevent run-on from the metal siding of the neighboring business.

g. Old parts and scrap stored outdoors at the Facility will be removed or covered with a tarp.

h. If an Action Plan is required pursuant to paragraphs 22-23 below due to exceedances during the 2017-2018 Wet Season, Ajax shall install rain gutters around the entire roof perimeter of the Facility that route to roof drain downspout filters in compliance with paragraph 15.e, above, by October 1, 2018

i. Dies stored outdoors at the Facility will be removed or moved off the ground and covered with a tarp.

j. Ajax shall use  HEPA vacuum(s) and vacuum the pavement at entries of the Facility along 48th Street at the end of each day of operations.

k. At least once per month the Facility shall be swept with a regenerative sweeper.

l. Area behind metal forging press will be enclosed during operations to prevent dispersal of particulate matter.

m. Grinding area will be enclosed with full length metal or plastic partitions covering open door on northeast of Facility to prevent dispersal of particulate matter.

## B.    Monitoring and Reporting Program (M&RP)

16. Sample Frequency.  The Defendant shall collect storm water samples in the event that discharges occur at the Facility from at least four (4) qualifying storm events per Wet Season in accordance with the 2015 Permit.  Any failure to sample a discharge from each discharge location at the Facilities until four (4) storm events per Wet Season have been sampled shall be documented and submitted to Waterkeeper within ten (10) days of the date a sample should have been collected but was not.

17. Sample Analysis.  The Defendant shall analyze samples collected in accordance with the Permit for Total Suspended Solids, pH, Oil & Grease, Zinc, Nitrate + Nitrite Nitrogen, Aluminum, Iron, Copper, Lead, as well as such additional constituents required by the Permit and those pollutants the Defendant has reason to believe may be present in a stormwater discharge.  The Defendant shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the Numeric Limits in Table 1.

18. Sampling Locations.  The Defendant shall collect storm water samples from each of the following three outfall locations as depicted in Exhibit A hereto:

*a.* NE (Discharge Point 1) and SE (Discharge Point 2) locations

19. Written Report.  Defendant shall submit a written report to Waterkeeper at the end of each Wet Season listing all storm events that occurred and resulted in a discharge at any of the Facilities' stormwater outfalls. The report shall be submitted on or before July 30 every year during the term of

this Consent Decree and must include a table summarizing analytical results from Facility's storm water samples and comparing those results to the Numeric Limits in Table 1.

20. <u>Revising the M&RP.</u>  Within thirty (30) calendar days of the Effective Date of this Consent Decree, Defendant shall revise its M&RP for the Facility to incorporate the requirements of this Consent Decree and the Storm Water Permit.  The Defendant shall submit the revised M&RP to Waterkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) calendar days of the Effective Date.

a. Waterkeeper shall provide comments, if any, to the Defendant within thirty (30) calendar days of receipt of the revised M&RP.  The Defendant shall incorporate Plaintiff's comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

b. Defendant shall revise the Facility's M&RP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs. Defendant shall revise the M&RP within thirty (30) days of the changes and submit the revised M&RP to Waterkeeper for review as provided in paragraph 20.a., above.

**C.    Numeric Limits**

21. <u>Numeric Limits for Storm Water Discharges.</u> Contaminants in a storm water discharge from any discharge point at the Facilities shall not exceed the limits ("Numeric Limits") in Table 1.

**Table 1.  Numeric Limits**

| Contaminant | Numeric Limit |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.5-8.5 |
| Oil and Grease | 15 mg/L |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L |
| Zinc | 0.120 mg/L* |
| Aluminum | 0.75 mg/L |
| Iron | 1.00 mg/L |
| Copper | 0.013 mg/L* |
| Lead | 0.065 mg/L* |

NOTE:  An * next to a Numeric Limit denotes a CTR Limit.  Compliance with CTR based Numeric Limits for metals will be based on an evaluation of dissolved concentrations only.

22. <u>Action Plan for Table 1 Exceedances during the Consent Decree.</u> In any Wet Season during which analyses of a storm water sample demonstrate two (2) or more exceedances of the numeric limits detailed in Table 1, Defendant shall prepare and submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") to Waterkeeper by August 15 following the Wet Season in which the exceedances giving rise to the obligation to submit an Action Plan occurred.

23. <u>Action Plan Requirements</u>. Each Action Plan submitted shall be in writing and shall include, at a minimum: (1) the identification of the pollutant(s) exceeding Table 1's Numeric Limit(s), (2) an assessment of the source of each exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementing proposed BMPs, which shall not exceed the start of the following Wet Season.

24. <u>Action Plan Review</u>.  Waterkeeper shall have 30 days upon receipt of Defendant's Action Plan to provide Defendant with comments.  Within 30 days

from the date Waterkeeper comments on Defendant's Action Plan, Defendant shall provide Waterkeeper with a written explanation if Defendant refuses to develop and/or implement any of Waterkeeper's recommended additional BMPs. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions set out in Section IV below.

25. Defendant shall have until October 1 following the Wet Season in which the exceedances giving rise to the obligation to submit an Action Plan occurred to implement the Action Plan. Defendant shall notify Waterkeeper in writing when the Action Plan has been implemented.

26. If any structural BMPs require any government agency approval, then Defendant shall exercise diligent efforts in obtaining such approval. Defendant may contact Waterkeeper to request an extension of the deadline in paragraph 22, if necessary, to implement the structural BMPs requiring agency approval. Waterkeeper shall not unreasonably withhold consent to an extension request.

**D.    Storm Water Pollution Prevention Plan**

27. SWPPP Revisions.  Within thirty (30) calendar days of the Effective Date of this Consent Decree, Defendant shall revise the SWPPP to identify (1) current BMPs, (2) BMPs developed pursuant to this Consent Decree to control the discharge of pollutants from the Facility as described in paragraph 15, (3) a description of all industrial activities, (4) corresponding potential pollutant sources for industrial activities, (5) a description of the potential pollutants from each source and (6) the revised M&RP as described above in section B. The Defendant shall submit the revised SWPPP to Waterkeeper for review and comment as soon as it is completed, but in any event no later than thirty (30) calendar days of the Effective Date.

a.  Waterkeeper shall provide comments, if any, to Defendant within thirty (30) calendar days of receipt of the SWPPP. Defendant shall

incorporate Plaintiff's comments into the SWPPP, or justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions set out in Section IV of this Consent Decree.

b. Defendant shall revise the SWPPP if there are any material changes in the Facility's operations, including, but not limited to, changes to stormwater discharge points or BMPs. Defendant shall revise the SWPPP within thirty (30) days of the changes and submit the revised SWPPP to Waterkeeper for review and comment as provided in paragraph 27.a, above.

**E.    Employee Training**

28. Within thirty (30) calendar days of the Effective Date, Defendant shall develop a formal training program, including any training materials, as necessary, for effective implementation of the training program ("Training Program").

29. The Training Program shall ensure (a) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (b) that these employees are properly trained to perform the required compliance activities. Such Training Program shall be specified in the SWPPP.

30. The Training Program shall require specific training to include at least the following:

a.  <u>Non-Storm Water Discharge Training.</u>  The Defendant shall train all employees about the Storm Water Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are, how to detect them, and how to prevent them;

b.  <u>BMP Training</u>. The Defendant shall train all employees responsible for BMP implementation and maintenance to ensure that BMPs are used effectively to prevent the exposure, discharge, and/or treatment of storm water at the Facilities.

c.  <u>Sampling Training</u>. The Defendant shall train all individuals collecting samples at the Facility pursuant to this Consent Decree or the Storm Water Permit on the proper sampling protocols, including chain of custody requirements, to ensure storm water and/or non-storm water samples are properly collected, stored, and submitted to a certified laboratory;

d.  <u>Visual Observation Training.</u> The Defendant shall provide training to all individuals performing visual observations at the Facilities pursuant to this Consent Decree and the Storm Water Permit.

31. Training shall be provided by a private consultant or a representative of Defendant familiar with the requirements of this Consent Decree and the Storm Water Permit, and shall be repeated as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP.  All new staff shall receive this training before assuming responsibilities for implementing the SWPPP or the M&RP.

32. The Defendant shall maintain training records to document compliance with this paragraph, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

## F.    Compliance Monitoring and Reporting

33. <u>Annual Site Inspections.</u> Up to three Waterkeeper representatives or consultants (including an attorney), may conduct up to two physical inspections per year ("Site Inspection") of the Facility while this Consent Decree is in effect.  Site Inspections shall occur during normal business hours and

Waterkeeper shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection in anticipation of wet weather, and seventy-two (72) hours notice during dry weather. Notice will be provided by telephone and electronic mail.  During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives access to the Facility's SWPPP, M&RP, any and all storm water monitoring records, and to reports and data related to storm water monitoring at the Facilities.  During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives to collect samples of storm water or non-stormwater discharges, and samples from any infiltration galleries or treatment systems, if applicable, at the Facility. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.  If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection.  Waterkeeper agrees that all individuals participating in a Site Inspection will execute, as necessary, waivers, releases and similar agreements.

34. <u>Waterkeeper's Compliance Monitoring</u>. Defendant shall pay a total of seven thousand five hundred dollars ($7,500.00) to compensate Waterkeeper for costs and fees to be incurred for monitoring Defendant's compliance with this Consent Decree. Payment shall be received within fifteen (15) days of the Effective Date payable to "Los Angeles Waterkeeper" addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, California 90401, and sent via courier or overnight delivery. Failure to submit payment as required under this paragraph will constitute a breach of the Consent Decree.

35. <u>Action Plan Payments</u>. Defendant shall pay three thousand, five hundred dollars ($3,500) each time an Action Plan is submitted to Waterkeeper. Payments shall be made payable to "Los Angeles Waterkeeper" and addressed

to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401, and sent via courier or overnight delivery. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

36. Data Reporting.  During the life of this Consent Decree, Defendant shall provide Waterkeeper with a copy of all Consent Decree and Permit compliance and monitoring data, including inspection reports, related to the Facilities' coverage under the Storm Water Permit. The Defendant shall provide Waterkeeper with all laboratory analyses related to sampling at the Facilities within fifteen (15) business days of the Defendant's receipt of such information.

37. Document Provision. During the life of this Consent Decree, Defendant shall copy Waterkeeper on all documents and communications related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State, local agency, county, or municipality.  Such reports and documents shall be provided to Waterkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received from any regulatory agency, State or local agency, county, or municipality shall be provided to Waterkeeper within fifteen (15) business days of receipt by the Defendant.

## G.    Environmental Project, Reimbursement of Litigation Fees and Costs, and Stipulated Penalties

38. Environmental Project. The Defendant agrees to make a payment of seventeen thousand five hundred dollars ($17,500) to be received within ninety (90) calendar days of the Effective Date to the Rose Foundation for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological and/or public health effects of storm water and/or non-stormwater discharges into Los Angeles area waterbodies.  The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little,

Rose Foundation for Communities and the Environment, Attn: LA Waterkeeper v. Ajax Forge Co. at 1970 Broadway, Suite 600, Oakland, CA 94612-2218. Defendant shall provide Waterkeeper with a copy of such payment.

39. Reimbursement of Plaintiffs' Fees and Costs. The Defendant agrees to partially reimburse Plaintiff for its investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling thirty-five thousand dollars ($35,000) to be paid in three payments.  A payment of fifteen thousand dollars ($15,000) shall be received within thirty (30) calendar days of the Effective Date and made payable to Law Office of Gideon Kracov and delivered by certified mail or overnight delivery at 801 S. Grand Av., 11th Floor, Los Angeles, CA 90017.  A second payment for $10,000 dollars (ten thousand dollars) shall be received within sixty (60) calendar days of the Effective Date and made payable to Law Office of Gideon Kracov and delivered by certified mail or overnight delivery at 801 S. Grand Av., 11th Floor, Los Angeles, CA 90017.  A third payment of $10,000 (ten thousand dollars) shall be received within ninety (90) calendar days of the Effective Date and made payable to Law Office of Gideon Kracov and delivered by certified mail or overnight delivery at 801 S. Grand Av., 11th Floor, Los Angeles, CA 90017

40. Stipulated Payment. The Defendant shall make a remediation payment of six hundred dollars ($600) for each missed deadline included in this Consent Decree.  Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendant's alleged discharges and shall be awarded to the Rose Foundation, and mailed via certified mail or overnight delivery per the instructions above. The Defendant agrees to make the stipulated payment within thirty (30) days of a missed

deadline and make the payment via overnight delivery or by certified mail. The Defendant shall provide Waterkeeper with a copy of each such payment at the time it is made.

### H.    Agency Review of Consent Decree

41. Plaintiff shall submit this Consent Decree to the Federal Agencies, within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

## IV.    DISPUTE RESOLUTION

42. This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43. <u>Meet and Confer</u>.  Either party to this Consent Decree may invoke the dispute resolution procedures of this Section by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution under this Section.  The Parties shall then meet and confer in an attempt to resolve the dispute no later than thirty (30) calendar days from the date of the notice.

44. If the Parties cannot resolve the dispute within fourteen (14) days after the meet and confer described in paragraph 43, the Parties agree to request a settlement meeting before the Judge assigned to this action.  In the event that

the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Judge, the Parties agree to submit the dispute via motion to the District Court.

45. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant portions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure and applicable case law interpreting such provisions shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court. Plaintiff and Defendant agree to file any waivers necessary for the Judge to preside over any settlement conference and motion practice.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

46. In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for Defendant's failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Termination Date of this Consent Decree.

47. Nothing in this Consent Decree limits or otherwise affects Plaintiff's or Defendant's rights to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to the Defendant.

48. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or

acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

49. <u>Force Majeure</u>. The Defendant shall notify Waterkeeper pursuant to the terms of this paragraph, when timely implementation of the requirements set forth in this Consent Decree becomes impossible, despite the timely good-faith efforts of the Defendant, due to circumstances beyond the reasonable control of the Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant. Any delays due to Defendant's failure to make timely and bona fide applications and to exercise diligent efforts to obtain necessary permits, or due to normal inclement weather, shall not, in any event, be considered to be circumstances beyond Defendant's control. In no circumstances shall a claim of inability to pay be considered Force Majeure.

a. If the Defendant claims impossibility, they shall notify Waterkeeper in writing within twenty-one (21) calendar days of the date that the Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe: i) the anticipated length of time the delay may persist; ii) the cause or causes of the delay; iii) the measures taken or to be taken by the Defendant to prevent or minimize the delay; iv) the schedule by which the measures will be implemented; and v) the anticipated date of compliance. The Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b. The Parties shall meet and confer in good-faith concerning the non-performance and, where the Parties concur that performance was or is impossible,

despite the timely good faith efforts of the Defendant, due to circumstances beyond the control of Defendant that could not have been reasonably foreseen and prevented by the exercise of due diligence by the Defendant, new deadlines shall be established.

      c.  If Waterkeeper disagrees with the Defendant's notice, or in the event that the Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, the Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VI.    MISCELLANEOUS PROVISIONS

      50. Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

      51. Choice of Law.  The laws of the United States shall govern this Consent Decree.

      52. Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

      53. Correspondence.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

If to Plaintiff:

Arthur Pugsley

Melissa Kelly
Staff Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
arthur@lawaterkeeper.org
melissa@lawaterkeeper.org

With copies to:
Bruce Reznik
Executive Director
Los Angeles Waterkeeper
bruce@lawaterkeeper.org

If to Defendant:
Jeff McElrath
President
Ajax Forge Company, Inc.
1956 E. 48th Street
Vernon, CA 90058

With copies to:
W. Lee Smith
Attorney
180 E. Ocean Blvd.
Suite 200
Long Beach, CA

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

54. <u>Effect of Consent Decree</u>.  Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendant's

compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

55. <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

56. <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

57. <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

58. <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

59. <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree.

60. The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

61. The Parties agree to be bound by this Consent Decree and not to

contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

The parties have demonstrated their agreement to enter into this Consent Decree through the signatures of their representatives, as shown in the as-filed version of the proposed Consent Decree at ECF No. 28-1.

The Clerk of the Court shall close the case.

**IT IS SO ORDERED:**

Date: February 23, 2018

_____
Honorable Otis D. Wright
DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA